IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

AIR LIQUIDE INDUSTRIAL U.S. LP,

    Plaintiff,

vs.                                       1:08-CV-49 (WLS)

FIRST UNITED ETHANOL, LLC,
and SOUTHWEST GEORGIA ETHANOL,
LLC,

    Defendants.

## ORDER

Before the Court is Plaintiff's motion for a preliminary injunction. (Doc. Nos. 7). A hearing on the motion was held on May 29, 2008. Plaintiff and Defendants were represented by counsel and evidence was taken from the parties. For the following reasons, Plaintiff's motion for a preliminary injunction (Doc. No 7) is **DENIED.**

## DISCUSSION

Defendant First United Ethanol, LLC ("FUEL") is a Georgia limited liability company formed in 2005 to construct an ethanol manufacturing plant near Camilla, Georgia. The company raised $74 million from local investors and borrowed $85 million to build the facility. In 2007, Southwest Georgia Ethanol, LLC, ("SWGE") was created as a wholly owned subsidiary of FUEL to comply with an agreement to refinance the long term debt of the company. From September 2006 until January 16, 2008, Anthony Flagg served as the CEO of FUEL.

Defendant SWGE is constructing a 100 million gallon-per-year ethanol plant in Pelham, Georgia. The plant is expected to open by September 2008. A by product of ethanol manufacturing is carbon dioxide ("CO2"). Carbon dioxide is a marketable product

1

and is expected to serve as an additional revenue stream for FUEL/SWGE. In 2006, Defendant FUEL began to seek out potential purchasers of its CO2. In October 2007, Flagg executed an agreement to sell the CO2 to Airgas and sent it to Airgas. Airgas ultimately rejected the agreement because it was concerned about the viability of ethanol plants and wanted FUEL to provide equity investment in the project. Flagg rejected the counter offer and informed Airgas that he was going to negotiate with other purchasers.

In the fall of 2007, Defendant FUEL was engaged in refinancing its long term debt with WestLB. WestLB is an international lender. The refinancing was the result of increased construction costs. As a part of the refinancing agreement, FUEL was required to form SWGE as a wholly owned subsidiary and transfer FUEL's assets to SWGE. As part of the financing agreement, WestLB required SWGE to enter into a contract for the sale of CO2 by June 1, 2008. WestLB also gained the right to approve any CO2 contract. The agreement and conditions were apparently completed on November 20, 2007. As of that date FUEL was unable to negotiate a contract for the sale of CO2.

SWGE's Operating Agreement states that SWGE is governed by a Management Committee consisting of three persons. The current members of the committee consist of Murray Campbell, Rick Moss, and Mark Glass. Flagg was not an officer of SWGE. The management agreement allowed the Committee to appoint "Officers" or "Authorized Persons" to transact business on behalf of SWGE. Flagg, according to SWGE, was an "authorized person" to conduct certain types of business, but the parties dispute the extent of his authority to negotiate and bind the company as to the CO2 contract.

After Airgas and FUEL failed to reach a CO2 purchase agreement, Flag began negotiations with Jill Blake of Air Liquide Industrial U.S. LP for the sale of CO2. On December 21, 2007, Flagg sent an email to Blake stating that "[be] assured we have a deal." Later that day, Blake emailed proposed changes to the "agreement." The changes included a request for a survey and for a legal description of land that was part of the agreement.

2

In order to sell its CO2, SWGE would require the purchaser to build a CO2 extraction plant on land adjacent to the ethanol plant. The plat for the SWGE plant provides for the availability of approximate 7 acres of land for the use as a CO2 plant. As part of any agreement, the CO2 purchaser would have to purchase or lease the necessary land, build a plant, obtain utilities and easements.

By January 16, 2008, the negotiations were purportedly complete. Plaintiff had been provided with a survey and legal description of the land in question. Plaintiff proposed using only four acres to build its CO2 plant. Blake sent a purported final agreement to Flag on that day. On that same day, however, Flagg resigned as CEO of FUEL.

Murray Campbell was appointed interim CEO of FUEL. After a conversation with Blake, on or about January 16, 2008, Campbell became aware of the purported agreement between Flagg and Plaintiff. Soon afterwards, Campbell reviewed the agreement and found several terms either unacceptable to SWGE or were terms which SWGE could not perform. Campbell raised these issues with Plaintiff and negotiations continued for a period of time. The parties failed to resolve these issues to their satisfaction and SWGE re-opened negotiations with Airgas.

In mid-March, SWGE determined that negotiations with Airgas were more productive. Defendant decided to pursue an agreement with Airgas and informed Plaintiff that it was terminating negotiations. Plaintiff asserted that it had an enforceable contract dating from December 21, 2007. SWGE denied there existed an enforceable contract and this action ensued.

In general to prevail on a motion for a preliminary injunction, the moving party must establish: (1) a substantial likelihood of prevailing on the merits; (2) irreparable injury unless the injunction issues; (3) the threatened injury outweighs whatever damage the proposed injunction may cause the opposing party; and (4) the injunction would not be adverse to the public interest. United States v. Jefferson County, 720 F.2d 1511, 1519 (11th

3

Cir. 1983). The Eleventh Circuit has stated:

> A preliminary injunction is a powerful exercise of judicial authority in advance of trial. The chief function of a preliminary injunction is to preserve the status quo until the merits of the controversy can be fully and fairly adjudicated. Amer. Radio Ass'n v. Mobile Steamship Ass'n, Inc., 483 F.2d 1, 4 (5th Cir.1973)

Northeastern Florida Chapter of Ass'n of General Contractors of America v. City of Jacksonville, 896 F.2d 1283, 1285 (11th Cir. 1990).

In the present case, the obstacle is whether Plaintiff has clearly shown that it has a substantial likelihood of success on the merits. Id.. In order to satisfy that requirement, Plaintiff must have shown that there is a substantial likelihood that there existed an enforceable contract between the parties.

The record and the testimony at the hearing is the only basis on which the Court can base its decision. Based on that information the Court can make certain findings of fact. For example, it is clear that FUEL/SWGE desired to enter into an agreement to sale $CO_2$. Whether Flagg had the authority to bind FUEL or SWGA, it appears that he had authority to negotiate a contract with $CO_2$ purchasers. By December 21, 2007, the record reveals that Plaintiff believed that it had reached an agreement in principle, if not in fact. In other words, the evidence shows that the parties at least "agreed to agree."

These observations, however, reveal the problem that confronts Plaintiff. If the focus were solely limited to December 21, 2007, and before, Plaintiff's likelihood of success on the merits would be great. But the problems arise when the purported agreement is examined more closely and negotiations over the terms continue past that date.

Plaintiff argues that the contract is for the "sale of goods" or the contract is akin to such a sale of goods and is, therefore, governed by the Uniform Commercial Code ("UCC"). A close review of the contract, however, reveals that it is not quite so simple. In order to purchase the $CO_2$, the purchaser will have to build a $CO_2$ extraction plant. Further, the

4

contract proposed by Plaintiff calls for the sale of goods in excess of $500 and a term of 15 years. The necessity of having to build a plant on Defendants' land requires that real estate questions enter into this contract for the "sale of goods." By their nature, contracts involving land implicate the Statute of Frauds. Further, any contract that cannot be performed within one year also implicates the Statute of Frauds. See, O.G.C.A. § 13-5-30.

The Statute of Frauds requires a writing signed by the party charged for contracts effecting the interests in real property and for contracts that cannot be performed within one year. As noted previously, Plaintiff argues that this Court should apply the Statute of Frauds contained in the UCC to the proposed contract. Plaintiff points out that in commercial agreements that the UCC Statute of Frauds is less rigorous than the common law Statute of Frauds. In other words, "[t]he UCC does not require that the contract itself be in writing, only that there be adequate documentary evidence of its existence and essential terms," Cloud Corp. v. Hasbro, Inc., 314 F.3d 289 (7th Cir. 2002).

Defendants of course argue that the Georgia common law Statute of Frauds should apply. Defendants also cited to case law to support their position. Beaulieu of America v. Coronet Industries, 173 Ga. App. 556 (1985). In other words, the common law interpretation of the Statute of Frauds, regarding real estate and length of time, would negate or weigh heavily against Plaintiff's assertion that the agreement is an enforceable contract.

The Statute of Frauds question illustrates the problem facing Plaintiff in showing that it has a substantial likelihood of success on the merits. Before a jury or other fact finder can determine whether the agreement between the parties is enforceable, this Court will have to make the legal determination of which Statute of Frauds will apply, if any. The same is true concerning other issues involved in forming the contract. Did Flagg have the authority to bind FUEL, SWGE or WestLB? Did the proposed changes made by Plaintiff after Flagg stated there was a "deal" negate the contract, operate as counter proposals or operate as rejections of the contract? Were those proposed changes material terms?

Before the alleged contract can be enforced or damages awarded, there will have to be legal determinations of these questions and possibly others. That is not to say that a valid or enforceable contract does not exist between the parties. There is evidence that there was a meeting of the minds on important terms of the contract. Plaintiff appeared to have believed that Flagg had authority to bind the company and Plaintiff may have relied to its detriment on Flagg's representations, but as the evidence reveals there are serious legal questions that must be resolved before a fact finder can determine the terms of any contract and whether there was a breech of the contract. In other words, there is reason to believe based on the evidence before the Court at this time, and depending on the correct or appropriate legal rules applied, that a fact finder could easily find in favor or one party or the other. With that in mind, the Court finds that Plaintiff has failed to carry its burden of proof in showing that it has a substantial likelihood of success on the merits.

As Plaintiff has failed to carry its burden on the required element of substantial likelihood of success on the merits, there is no reason to discuss the other required factors. Accordingly, Plaintiff's motion for a preliminary injunction (Doc. No. 7) is **DENIED.** This case shall otherwise go forward on the merits.

**SO ORDERED**, this   30th   day of May, 2008.

   /s/W. Louis Sands   
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**